113521 Seth Kornblum v. Southwest Airlines Good morning, your honors. Counsel, I'm Frank Kress on behalf of Seth Kornblum, the plaintiff in this matter. This matter involves a traveling employee. The plaintiff is a commercial airline pilot, and he was injured while on a layover after having landed in Tampa, Florida, taking off from his home base in Chicago. This is a very interesting case, because it's sort of a human element, and he ends up at Krabby Bill's and he's drinking until two in the morning. But let me ask you a point of question. You can probably agree on the law. A traveling employee may be compensated for an injury as long as the injury was sustained while he's doing or engaged in an activity that's both reasonable and foreseeable. Correct? That is correct. So I guess the point of question is, and of course he was drinking, and there's other cases that say merely because somebody's drinking and then has an accident doesn't take them out of the realm of compensability. Absolutely. Obviously, that would be your point as well. But how is walking after having a number of drinks onto an unfamiliar and unlit dock at 2 o'clock in the morning to try and determine if jet skis are available for the next day reasonable and foreseeable and something that the employer could anticipate? Well, that's the question, because as you know from my brief, we are sitting here subject to the manifest weight of the evidence, and the Commission found that it was not reasonable and foreseeable. The arbitrator had found that it was absolutely reasonable and foreseeable. And when you've got a standard like this, you have to, you would have to find that no rational trier of fact could have found the way that it did. And from your inflection, I think that you're indicating to me that you think perhaps the Commission was rational. Wait a second. Let's not get off on a very timely argument that we occasionally have. I submit humbly that you're blending two different standards of review. The definition of the manifest weight of the standard is that an opposite conclusion is clearly apparent. A rational trier of fact is generally used with an abuse of discretion standard. So I suggest you stay away from the rational trier of fact argument. Well, thank you, because I think that If no rational trier of fact could have decided an issue the way they did, would the opposite conclusion be clearly apparent? I think that in this case, the opposite conclusion clearly is apparent, given the Commission's history and the case law involving incidences that were far more unreasonable than this action of walking out under the stock. When we had oral arguments in front of this Commission, Commissioner Dauphine asked, what is the Respondent's contention here? Was it too late? Was it too dark? And she questioned it in a way that led me to believe that she found that there was no bright-line rule with regard to what is too late and what is too dark. And it is a question of reasonableness. And you have to look at it, I think it's a two-pronged approach, foreseeability and then reasonableness. And really, I think reasonableness is the key here. Because with regard to foreseeability, as you know from the record, there were three other employees of the defendant out on that dock on that night. Well, that doesn't mean it was foreseeable to the employer. The employer was They could have been taking a hot air balloon ride, all four of them. Is that foreseeable? The conduct of these employees gathering and socializing in these bars and in these restaurants around the country where the defendant places them, where they're on layover, there is a culture that has developed, which you can also tell from the record. This was the second hotel that they had to go in Tampa because the first one was known as the party hotel. I submit to you Bill's had a better connotation than the party hotel. I guess so. Let me stop you there. You said in these bars, so I mean, there is a location that might be foreseeable in a bar, but we're on a dock, right? We're on the dock that extends from the bar. There's a beach area between the bar and the dock. It is on premises. This gentleman and his companion did not wander off hundreds and hundreds of feet away from the hotel. They were on premises. Scrabby Bill's was in the hotel. The beach was adjacent to it, as was the dock then adjacent to it. Let me just ask you, I think we can probably agree. Yes, the fact that people on a layover are going to be socializing and engaging some revelry and entertaining themselves is certainly reasonable and foreseeable. I don't know that anybody is going to dispute that. But when you look at the cases, and I think a similar case is this U.S. Industries production machine, where the claimant was drinking, okay, as the claimant was in this case, then he decides to take a midnight pleasure drive in the mountains and gets injured. And the court held there, look, yeah, drinking is one thing. Going to the mountains is another thing. Going on to an unlit dock, unfamiliar dock at 2 o'clock in the morning and walking down to look for jet skis, how is that within the culture of drinking? My position on this case is that the example that you just mentioned, driving, this is driving drunk. I had a case in my brief where there was drunk driving involved and there were horrible, horrible injuries sustained, and the commission found that was reasonable and foreseeable. This gentleman was standing on a dock. It was late. It was dark. He was just standing on a dock. He walked down to the end of the dock seeking to find information about jet skis. Now, maybe I missed something. Is there somebody manning the jet ski, you know, house at 2 o'clock in the morning? No, and that's the point. He wasn't going out to actually rent a jet ski. He went out there to see if there was a sign. And the employer should anticipate this? The employer can anticipate it given the history of what happens with their employees on layover around the country, and then the question becomes then is it reasonable, and again, based on what is or is not reasonable or foreseeable, a factual inquiry. Absolutely, which is why we're here talking about the manifest weight of the evidence. And so let me ask you a question. Do you think in manifest weight cases there's any one right answer? Most manifest weight cases, the commission could have decided it either way, and we'd have to affirm it in whichever way they decided it. Because we can't say that the opposite conclusion is clearly apparent. Both of them are reasonable. They just chose one. I believe that in this case that the opposite is clearly apparent here based upon the history and the case law of what has happened with travel employees. Does that mean that your client is a pilot? No, I don't think it does. So it's reasonably foreseeable that he'll be out drinking five beers and two shots a night before he's going to fly out the next day at 4 p.m.? Yes, and in fact, there's testimony in the record about when they have to stop drinking depending upon when they have to fly the next day. I didn't see that testimony. What's it say? It's one of the flight attendants gave testimony on that. I don't have the exact date. Eight hours, battle, throttle. Does it say something like that? I'm sorry. I'm just, I don't know. I think I've heard that. Is that somewhere in the record? But that was certainly brought up at trial. Lots of the testimony at trial centered around this, the alcohol intake that day. But again, the record is clear that they didn't violate any of those rules. So that's not a consideration. It certainly gives us comfort the next time we fly, doesn't it? I will reassign myself to that. I'm struggling for a response. So according to you, if there's a culture on layovers that people are going to drink in party, that anything would go, no matter what activity, it seems that you're suggesting should be covered. I don't think that the Respondent and the Defendant in this case can claim to have been shocked at what happened. That's what I'm saying. So that's the standard we should use in all these cases as a shock factor? Shock the contents of the court. Okay. Is that what you're proposing? No, I don't think that. I don't believe that is the standard. Some of us are shocked easier than others. That's true. Again, my client's and my position on this is that the conduct was foreseeable, again, given the culture that developed with these flight crews around the country and the reasonableness standard, again, compared to what has happened in other cases decided by the same commission and what it deemed to be reasonable, this conduct was not even close to that. Thank you very much. Thank you, counsel. Respond? Thank you. May it please the Court. My name is Quinn Brennan. I represent Southwest Airlines, the appellee in this matter. Regarding that evening that took place before September 27, 2009, the Petitioner or the Plaintiff wants you to believe that this was a typical evening where he was conversing and relaxing with his flight crew. Regarding that evening, the Petitioner's testimony regarding the entire night was not credible for a number of reasons, including consumption. Well, did the commission find it was not credible, or are you just giving us your interpretation? Well, we addressed consumption that night, but the commission made its decision based on what he was doing at the moment that he was on the dock. So they didn't find that his entire testimony was not credible, did they? No, they did not. But I'm arguing that it's not credible because we don't really know what he was doing on the dock at some point between 2 and 3 o'clock in the morning. But what about this jet ski? It's not in the record he was trying to find jet skis for the next day? Well, he gave testimony in a recorded statement that he was looking for jet skis, but he testified at trial that he was exploring the hotel premises. The witness, the flight attendant, testified that they were looking into jet ski rentals. She testified that there were three men with them. He testified that there were two. We don't know what they were doing on deck. Let's assume that there was two men or three men or four men, however many men you want to assume, and he's going out and he's looking for the jet ski at 2 o'clock in the morning. Your position on behalf of the employer is that that's not reasonable, it's not foreseeable, and that's something the employer could anticipate, correct? That is our argument. It's our argument that looking into jet ski availability for the next day is not reasonable or foreseeable. It's our argument that his testimony that he was exploring hotel premises was not reasonable or foreseeable, and for whatever other purpose he could have been on that dock between 2 and 3 o'clock in the morning was not reasonable or foreseeable. Well, his argument is, where do you draw the limits? And maybe he's making a legitimate argument, is it's certainly anticipated that people on their layover may have been having a few drinks, correct? We don't dispute that. We don't dispute that. Neither does the commission. So why is walking out of the dock to look for jet skis at 2 o'clock in the morning not within the purview of the circuit? Well, we referred to the case of U.S. Industries versus the Industrial Commission, and I think it's very similar to it. That is where the commission made a finding and was upheld at the appellate court that the act of going into dark, unfamiliar territory at midnight or near that time was unreasonable and unforeseeable. In this case, not only do we have consumption, we have a gentleman walking around a dark hotel that he was unfamiliar with. He testified to that at a later point in time in the night. Is the dock known by the hotel? I'm sorry? Is the dock part of the hotel attached to the hotel? It's my understanding that it's all together. It's focused on the jet ski quite a bit. What if they walk out on the dock to look at the stars or the moon? Would that be unreasonable since it's part of the hotel, part of the bar where they work? Well, it's our argument that whatever it is that he was doing is unreasonable or unforeseeable. Could a married man going out on a dock with a flight attendant in the middle of the night be a reasonable and foreseeable thing for an employer to anticipate? You bet you it is. Well, it's our argument that it's not. I don't understand the jet ski, but what if they were going out to look at the moon? It's a full moon. It's beautiful out. Stars. I mean, forget the romance. It's just they're enjoying nature. I mean, would that be reasonable? We're calling for speculation because they testified that that's not what they were doing. But no, I don't think that that is reasonable and foreseeable. If you have a flight and you're responsible for a group of people to transport them across the country the following day, I think you have some sort of an obligation to do that. But counsel has indicated that the fact that he was drinking really is not a consideration for this Court because apparently it was far enough in advance of his next flight. Correct? Well, the FAA requires that pilots not be consuming alcohol within eight hours of a flight time. And this isn't eight hours. It would be 12 hours later, 14 hours later, right? Well, certainly. And I think that that actually bolsters the argument that he knew that he had plenty of time to recover from his Saturday night before he engaged in a flight at 4 p.m. the following day. What does all that have to do with anything? Well, it doesn't. It's on the record. But at the end of the day, if you strip all that away from the equation, you have a man and a flight attendant and unknown people out on a dock somewhere between 2 and 3 o'clock in the morning allegedly looking into jet ski availability or allegedly exploring hotel premises. It cannot be reasonable and foreseeable for an employer to anticipate that. What would be reasonable and foreseeable for this airline company to expect of their employees at this time? I mean, what falls in that category? Apparently, you would say it's reasonable and foreseeable that they would socialize, that they would go to a bar, correct? Yes. Okay. So now that's okay. How far now out do we go? Well, I'm not asking you to identify 11 p.m. or midnight or 1 a.m. as a cutoff time. I think you have to evaluate everything on a case-by-case basis. And in this case, we have a bar receipt that this guy signed three hours into it where he had four beers and 11 shots of Jägermeister. Okay. So now you're saying that there's something there in terms of the amount of alcohol that's consumed, right? That's the factor? I think you have to consider that. Where does the fall occur? I think you have to consider that. Or is it the situs of the fall? I don't know where you're going with this. I mean, is it the amount of alcohol? Now you're talking about a bar receipt. Or is it where then you were talking about a dock? Is it the situs of the fall? Is it the amount of alcohol? It's the situs of the fall. Situs of the fall. So if he fell in the bar, that's reasonable and foreseeable. I think that you have to consider how much consumption went into it. I think that you have to consider the time that it was at. Testimony, I mean. I think what you really need to focus in on, the activity at the time and where it happened. Stay away from the alcohol because the cases that you have cited even refer to the fact, the fact that somebody had been drinking is not a critical consideration in the analysis. You're getting involved in things you don't even need to argue, quite frankly. That's just my thought. Well, again, I guess that would bring me back to our argument at the end of the day, is that we can take consumption and everything aside, and what we're left with is a man and a woman on a dock at 2 o'clock in the morning, and we don't know what they were doing. But was that reasonable and foreseeable in the opinion of the commission because it's a fact question? That's all you need to argue, really. Okay. But you can argue anything else you want us to consider beyond that. I have no further arguments, then. Thank you. Thank you, counsel. Reply. I agree with Your Honor. That's all I needed to argue. The alcohol and everything else is a red herring. We're talking about what's reasonable, what's foreseeable. Counsel, I don't usually do this, but since Judge McCullough isn't here, you couldn't even convince Commissioner Mason. So you're familiar with Commissioner Mason's decision? Oh, yes, we are. We are familiar with Commissioner Mason's decision. Now, where did this occur? Gravy Bills. Gravy Bills, Tampa, Florida. Where? In Florida? In Florida. Tampa, Florida. Tampa, Florida. In a beach bar. On a dock. On a dock. Late at night. And, again, it's the case law that's developed has shown that there's been a lot more, that's been a lot more, in my mind, unreasonable that's been found to be reasonable and foreseeable. Apparently these commissioners don't travel and aren't very worldly. I know they travel. They go to Springfield.  Thank you very much for your time. Thank you, counsel. This matter will be taken under advisement. This position shall issue. We'll stand and brief recess.